NO. 07-03-0017-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

FEBRUARY 18, 2004

_____

RANDY CORTINEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 43,412-E; HONORABLE ABE LOPEZ, JUDGE

_____

Before QUINN and REAVIS, JJ. and BOYD, S.J.[1]

**MEMORANDUM OPINION**

Following a plea of not guilty, appellant Randy Cortinez was convicted by a jury of murder and punishment was assessed at 80 years confinement and a $10,000 fine. Presenting three points of error, appellant asserts the trial court erred (1) in denying his

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals sitting by assignment.

request for an instructed verdict of acquittal because the evidence was legally insufficient to support a conviction for murder; (2) in charging the jury on the law of parties when the evidence is factually insufficient to support a finding that he acted as a party to the murder; and (3) at the punishment phase of the trial by reconvening the jury after it had been dismissed and left the courtroom. Based upon the rationale expressed herein, we affirm.

On the night of July 7, 2000, appellant, his brothers, Domingo and Michael, and their friend, Chris, were at a bar they frequented. The victim and his friend, Johnny, who were not regular patrons of the bar, arrived near closing time to have some drinks and dance. At approximately 1:00 a.m. on July 8, the victim was ejected from the bar for being drunk and obnoxious. Shortly after last call was announced, Johnny noticed the victim was not in the bar and went outside to look for him. He observed appellant and his two brothers, who were all heavy set, and a female near the victim. The victim was five feet, four inches tall and weighed 103 and 1/2 pounds. Johnny testified that although he did not see appellant attack the victim, while attempting to aid the victim and instructing him to run, he suffered a deep cut on the side of his face. Johnny ran along the sidewalk shouting that his friend was being killed. Moments later, Johnny saw the victim lying in a puddle of blood. In shock, Johnny ran to his car and hastily drove away.

According to the manager of the bar and two security guards, after the victim was ejected from the bar, Domingo and his girlfriend had an argument and stepped outside to talk. Chris testified that he, appellant, and Michael followed Domingo outside. Domingo's

2

girlfriend testified that she and Domingo were arguing and that he was drunk and she was crying. Appellant and Michael tried to break up the argument and calm her down. The victim approached the group several times inquiring about the welfare of Domingo's girlfriend. He was told several times by appellant and Michael that everything was fine and asked to leave. Upon interfering in the argument for a third time, the victim was attacked by appellant and Michael. Evidence was presented that the victim was punched and kicked, and conflicting evidence was presented on whether appellant used a knife or other object to inflict the victim's wounds. Chris eventually pulled appellant and Michael off the victim and urged them to get into their car. According to Chris, after he broke up the fight, the victim remained on the ground with blood around him. The Cortinez brothers left in a car driven by a female friend, and Chris drove away in his own car.

The bar manager testified that after the Cortinez brothers left, he noticed the victim was "bleeding out of everywhere." The bartender called the police and one of the responding officers testified that when he arrived at the scene he found the victim lying in a large pool of blood. According to the officer, the victim was not moving and his breathing was very labored. Another officer took pads from a first aid kit and packed the victim's wounds and began CPR until the ambulance arrived. The victim did not survive the attack and the medical evidence established that he suffered 18 wounds–14 were stabs and 4 were incise--to the neck area with the fatal wounds perforating his left carotid artery.

TABC officers in an unmarked car who were preparing to go off duty heard the radio call about the fight and coincidentally, while they were stopped at a red light, noticed that the passengers in the car next to them looked suspicious. They followed the car to a residence and notified local law enforcement to follow up. Several police officers were dispatched to the residence. They approached the house on foot in a tactical manner with weapons drawn believing the suspects were armed and dangerous. Michael and three females were standing in the driveway. Michael had blood on his pants and was asked to assume the position. Shortly thereafter appellant approached from the backyard and after officers noticed blood on his pants, he was ordered to his knees and handcuffed.

By his first point of error, appellant asserts the trial court erred in denying his request for an instructed verdict of acquittal because the evidence is legally insufficient to support a conviction for murder. We disagree. In conducting a legal sufficiency review, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 157 (Tex.Cr.App. 1991), *overruled on other grounds*, Paulson v. State, 28 S.W.3d 570, 573 (Tex.Cr.App. 2000). As an appellate court, we may not sit as a thirteenth juror, but must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Cr.App. 1988).

Before determining whether the evidence is legally sufficient to sustain the conviction, we must review the elements the State was required to prove. In order to be guilty of murder, the State was required to prove that appellant intentionally or knowingly caused the death of the victim, or intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused the death. Tex. Pen. Code Ann. § 19.02(b)(1) and (2) (Vernon 2003). Section 6.03 of the Penal Code defines the culpable mental states of "intentionally" and "knowingly" as follows:

> (a) A person acts intentionally . . . with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
>
> (b) A person acts knowingly . . . with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly . . . with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Murder, intentionally or knowingly committed, is a result oriented offense. Cook v. State, 884 S.W.23d 485, 490 (Tex.Cr.App. 1994). The accused must have intended the result, death, or have been aware that his conduct was reasonably certain to cause that result. *Id.* Further, in establishing intent or knowledge and when faced with a record that supports conflicting inferences, we must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflict in favor of the prosecution and must defer to that resolution. Couchman v. State, 3 S.W.3d 155, 163 (Tex.App.–Fort Worth 1999, pet. ref'd), citing Matson v. State, 819 S.W.2d 839, 846 (Tex.Cr.App. 1992).

5

Eye witness testimony established that the victim was severely beaten by appellant. Appellant's friend, Chris, testified he saw appellant down on one knee repeatedly "punching" the victim with his right hand and that he had to pull appellant off of him. The manager of the bar testified that when he went to the parking lot to conduct a "routine check" prior to closing, he observed appellant on top of the victim "going at him" and that he noticed a reflection from a blade that appellant was holding in his right hand. During direct examination, the witness claimed he saw appellant use a knife to stab the victim; during cross-examination, however, he wavered and testified he could not be sure if appellant used a knife. One of the security guards from the bar, who was familiar with the Cortinez brothers, testified that while the victim was laying face down, he observed appellant on top of him with his left arm underneath the victim's neck while he was striking him with his right hand. He did not see appellant use a knife or other sharp instrument.

Domingo's girlfriend and Chris testified that appellant worked for a fire and water restoration service and that his job required him to use all sorts of knives and sharp instruments. Domingo's girlfriend claimed she did not see appellant use a weapon during the fight.

The medical examiner explained that the victim died from 18 wounds, two of them being fatal wounds to his neck that perforated his carotid artery. Some of the wounds indicated the use of a sharp instrument, probably one with a single-edge. The victim also

sustained numerous bruises and contusions caused by blunt force most likely resulting from being kicked or being hit with a knee or fist.

Forensic evidence established that the victim's blood was found on the running board of the right passenger side of the car in which appellant left the scene. The victim's blood was also found on appellant's boots, jeans, and hands. Although clothing and boots from three other suspects was also tested, a DNA analyst testified that the largest volume of the victim's blood was found on appellant's clothing.

Based on the foregoing evidence, including the conflicting testimony regarding whether appellant used a knife or sharp instrument, we must defer to the jury's resolution in favor of the prosecution that appellant was aware that his conduct was reasonably certain to cause death. We conclude that reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of murder beyond a reasonable doubt. Appellant's first point of error is overruled.

By his second point of error, appellant challenges the trial court's inclusion in the charge of the law of parties contending the evidence is factually insufficient to support a finding that he acted as a party to murder. We disagree. In conducting a factual sufficiency review, the Court of Criminal Appeals has directed us to ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the fact finder's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.

Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App. 2000) (adopting complete civil factual sufficiency formulation); *see also* King v. State, 29 S.W.3d 556, 563 (Tex.Cr.App. 2000). Accordingly, we will reverse the fact finder's determination only if a manifest injustice has occurred. *Johnson*, 23 S.W.3d at 12. In conducting this analysis, we may disagree with the jury's determination, even if probative evidence supports the verdict, but must avoid substituting our judgment for that of the fact finder. *See* Santellan v. State, 939 S.W.2d 155, 164 (Tex.Cr.App. 1997). It is the exclusive province of the fact finder to determine the credibility of the witnesses and the weight to be given their testimony. Johnson v. State, 571 S.W.2d 170, 173 (Tex.Cr.App. 1978); Armstrong v. State, 958 S.W.2d 278, 284 (Tex.App.--Amarillo 1997, pet. ref'd).

The jury charge provides in part:

> All persons are parties to an offense who are proven beyond a reasonable doubt to be guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both.

> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, direct, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

The charge also authorized the jury to convict appellant as a party or a principal actor. During the charge conference defense counsel objected to the inclusion of the law of

8

parties on the ground that the evidence showed that if appellant "did anything, he was acting alone."

In determining whether a charge on the law of parties is raised by the evidence, the trial court may look to events occurring before, during, and after the commission of the offense. Goff v. State, 931 S.W.2d 537, 544-45 (Tex.Cr.App. 1996), *cert. denied*, 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997); Medellin v. State, 617 S.W.2d 229, 231 (Tex.Cr.App. 1981). A defendant is criminally responsible for an offense committed by another if, with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other in the offense. Tex. Pen. Code Ann. § 7.02(a)(2) (Vernon 2003).

Chris testified that appellant and his brother Michael were beating the victim and that he had to pull them both off of him. Domingo's girlfriend testified that when police arrived at the Cortinez residence and arrested Michael, he said, "if anything happened, I did it." Forensic evidence established that the victim's DNA was found on Michael's boots and jeans and that Michael had a fresh cut on a finger on his left hand. Whether appellant assisted or aided Michael in beating the victim or whether he was the primary actor, we conclude after reviewing all the record evidence under *Johnson*, 23 S.W.3d at 11, and without substituting our own judgment, that the evidence is factually sufficient to support the trial court's inclusion in the charge of the law of parties. Point of error two is overruled.

By his third point of error, appellant contends the trial court erred by reconvening the jury after it had been dismissed and left the courtroom. For the reasons expressed herein, the point is moot. After the trial court received the jury's verdict on punishment and before pronouncing sentence, it announced the content of verdict number four of the charge:

> We the jury, having found the Defendant guilty of the indicted offense of murder, assess punishment at confinement in the Texas Department of Criminal Justice Institutional Division for a period of 80 years, and assess a fine in the amount of $10,000.00, signed by the presiding juror.

After the trial court thanked the jurors for their service and asked the bailiff to escort them out of the courtroom, the trial court realized that the last page of the charge containing verdict number seven which placed appellant on community supervision for 80 years had also been signed by the presiding juror. However, his signature was crossed out and the other jurors had placed their initials near his marked out signature.[2]

In an abundance of caution, the trial court directed the bailiff to recall the jurors. The record reflects the jurors were headed to their cars when asked to return to the courtroom.

---

[2]The jury verdict forms at the punishment stage consisted of three letter size pages. The first page contained paragraphs numbered 1, 2, and 3 with a signature line for each for the presiding juror for the assessment of punishment. Similarly, the second page contained paragraphs 4, 5, and 6 with a signature line for each for the presiding juror, and the last page contained only paragraph 7 with a signature line for the presiding juror. When the jury first returned with its verdict, the presiding juror presented the three pages as its verdict, reflecting by signature of the presiding juror that the jury had decided on paragraph 4 on the second page. Although the trial judge did not notice the third page, after he discharged the jury and was doing his "judicial housekeeping," he noticed that paragraph 7 had been completed and signed by the presiding juror but crossed out his signature and all of paragraph 7.

After defense counsel's numerous objections to recalling the jury and his motion for mistrial were overruled, the jurors were reconvened and instructed by the court to retire and give some indication of their intent in signing two verdict forms. After deliberating a second time, they returned with the same charge which contained a note from the presiding juror with initials of other jurors on verdict number seven indicating it was signed in error and that verdict number four represented their unanimous verdict.

Once the trial court accepts a verdict and discharges a jury, it is not authorized to recall the jury to have a verdict corrected. West v. State, 170 Tex. Crim. 317, 340 S.W.2d 813, 815 (1960); *see also* Webber v. State, 652 S.W.2d 781, 782 (Tex.Cr.App. 1983). However, when the jury has not separated or has only momentarily separated and is still in the presence of the court and it appears that no one has talked to the jurors about the case, the court may recall the jurors to correct their verdict. *Webber*, 652 S.W.2d at 782. *West* and *Webber*, however, are distinguishable and do not apply because they involved corrected verdicts. Here, although the jurors had left the courtroom and were headed to their cars, the trial court did not err in reconvening them because the proper verdict had already been returned and received by the trial court following the jury's initial deliberations. Verdict number seven, which had been signed in error, had been crossed out and approved by all jurors prior to their discharge. Thus, further deliberations by the jury after being reconvened did not result in a corrected verdict as in *West* and *Webber* and similar cases cited by appellant. We find appellant's third contention moot.

11

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Do not publish.