NO. 12-08-00320-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


DONALD RAY BOYD,
§
 APPEAL FROM THE 114TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

MEMORANDUM OPINION


 A jury convicted Appellant, Donald Ray Boyd, of the offense of aggravated sexual assault
of a child. The jury found the enhancement paragraph in the indictment to be true and assessed his
punishment at imprisonment for life. Appellant urges three issues on appeal. In his first issue, he
complains that the trial court erred in not instructing the jury "that they could only consider
Appellant's bad acts to determine intent or rebut a defensive theory." In his second issue, he
contends "the trial court erred in allowing the State to improperly offer evidence of extraneous
offenses." In his third and last issue, he maintains the trial court erred in allowing testimony as to
the credibility of the complainant. We affirm.


Background


 The indictment alleges "that on or about June 15, 2001, Appellant did then and there,
intentionally or knowingly cause the sexual organ of D.C., a child who was then and there younger
than fourteen years of age and not the spouse of the defendant, to contact and penetrate the mouth
of the defendant."

 D.C. was eighteen years old when he testified at Appellant's trial. Appellant was his
stepfather. D.C. told the jury that when he was ten years old, Appellant exposed his penis to him in
the bathroom. He testified that Appellant touched his penis with his hand and that Appellant also
touched his own penis. This behavior took place once or twice a month for some time and occurred
more than four times. According to D.C., the last incident occurred when he was twelve years old
when Appellant placed his mouth on D.C.'s penis.

 D.C. told no one of these events until he was seventeen. He then told his mother. His
disclosure of the alleged abuse came at about the same time that his mother and stepfather made
D.C.'s girlfriend leave the house because of the negative influence she had on him. D.C. admitted
that, during a previous investigation, he had told the child protective services investigator on
September 2, 2005 that there was "no physical or sexual abuse going on in this house."

 D.C.'s brother, C.C., testified that Appellant had sexually assaulted him on two occasions. 
He also admitted that, in several interviews with Child Protective Services (CPS) and law
enforcement agencies, he had denied that any such conduct had taken place.

 Appellant's daughter, C.B., testified that, sometime in the year before trial when she was nine
years old, she awoke to find her father over her with his hand inside her panties touching her genital
area. His eyes were closed as if he were asleep and he never said anything. After five or so minutes
he rolled over, apparently asleep. Her mother was sleeping on the other side of her, but C.B. did not
wake her, because she was afraid. In contrast to the incidents alleged by the boys, she told her
mother two days later.


Jury Instruction on Extraneous Offenses


 In his first issue, Appellant maintains "[t]he trial court erred in not instructing the jury that
they could only consider Appellant's bad acts to determine intent or to rebut a defensive theory."
Appellant did not request such an instruction at trial.

 When the state is permitted to introduce evidence of a defendant's extraneous acts for a
limited purpose, the defendant has the burden of requesting an instruction limiting the consideration
of those acts to only those purposes for which they were admitted. Ex parte Varelas, 45 S.W.3d
627, 631 (Tex. Crim. App. 2001). The trial court errs in not giving the instruction if requested by
the defendant. Id.

 Appellant failed to request an instruction limiting the use of the extraneous offense evidence
at the time the evidence was admitted. See Tex. R. App. P. 33.1(a)(1). Therefore, no error is
preserved. See id. Appellant's first issue is overruled.


Admission of Extraneous Offenses


 In his second issue, Appellant complains that "the trial court erred in allowing the State to
improperly offer evidence of extraneous offenses including multiple occasions of alleged sexual
misconduct with children and general evidence of Appellant's character." 

Standard of Review

 A trial court's admission of extraneous offense evidence is reviewed for an abuse of
discretion. Rankin v. State, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996). A trial court does not
abuse its discretion as long as its decision to admit evidence is within the "zone of reasonable
disagreement." Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

Applicable Law

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person
in order to show that on a particular occasion the person's actions conformed to that character. Tex.
R. Evid. 404(b). It may be admissible, however, for other purposes such as proof of motive,
opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to rebut
a defensive theory. Id.; Johnston v. State, 145 S.W.3d 215, 220-21 (Tex. Crim. App. 2004).
Extraneous offense evidence is admissible under rule 404(b) when it is offered to rebut an
affirmative defense or a defensive issue that negates one of the elements of the crime. Powell v.
State, 63 S.W.3d 435, 438-40 (Tex. Crim. App. 2001). Evidence of a defendant's other similar acts
of sexual misconduct is admissible to contradict and rebut the defendant's defensive theory that he
is the victim of a "frame-up." Wheeler v. State, 67 S.W.3d 879, 887 (Tex. Crim. App. 2002). 
"[E]vidence of a defendant's particular modus operandi is a recognized exception to the general rule
precluding extraneous offense evidence, if the modus operandi evidence tends to prove a material
fact at issue, other than propensity." Casey v. State, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007). 
"In the context of extraneous offenses, modus operandi refers to 'a defendant's distinctive and
idiosyncratic manner of committing criminal acts.'" Id. at 880-81. "[E]vidence of a remarkably
similar act may be admissible to prove the corpus delicti (the crime itself), intent, or lack of consent
under 'the doctrine of chances.'" Id. at 881 (quoting Daggett v. State, 187 S.W.3d 444, 453 n.18
(Tex. Crim. App. 2005)).

 If the trial court rules that the evidence of extraneous misconduct is not barred by rule 404(b),
the opponent may further object that, although relevant, the evidence should be excluded under
Texas Rule of Evidence 403. Rule 403 provides that "[a]lthough relevant, evidence may be excluded
if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or needless presentation of
cumulative evidence." Tex. R. Evid. 403. Probative value is evaluated by how convincingly it
serves to make more or less probable the existence of a fact of consequence to the litigation, coupled
with the proponent's need for that item of evidence. Casey, 215 S.W.3d at 879. The trial court is
required to determine whether the probative value of the evidence is substantially outweighed by one
of the countervailing considerations listed in the rule. Id.

 In the instant case, Appellant objected that the probative value, if any, of the evidence of
similar sexual assaults by Appellant against the victim's brother and sister was substantially
outweighed by the danger of unfair prejudice. "Unfair prejudice" refers to the "tendency" of the
challenged evidence "to suggest decision on an improper basis, commonly, though not necessarily,
an emotional one." Montgomery, 810 S.W.2d at 389.

 An appellate court must disregard a nonconstitutional error that does not affect a criminal
defendant's "substantial rights." Tex. R. App. P. 44.2(b). Under the rule, the reviewing court "may
not reverse for nonconstitutional error if the court, after examining the record as a whole, has fair
assurance that the error did not have a substantial and injurious effect or influence in determining
the jury's verdict." Garcia v. State, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004).

Discussion

 Appellant complains that the trial court admitted evidence that Appellant physically abused
his wife and children, abused alcohol and drugs, and sexually abused his daughter and D.C.'s
younger brother. 

 Physical Abuse and Substance Abuse

 Much of the testimony regarding Appellant's abuse of his wife and children and of
Appellant's alcohol and drug abuse was, in fact, introduced by Appellant in support of his defensive
theory that D.C.'s allegations were concocted out of resentment stemming from Appellant's
mistreatment of the family. Error, if any, in the admission of any such evidence presented by the
State was not preserved by a contemporaneous trial objection. See Tex. R. App. P. 33.1(a)(1);
Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). Therefore, there is nothing for
us to review.

 Sexual Abuse of D.C.'s Brother

 Appellant, however, strenuously objected to the State's proffer of the testimony of D.C.'s
younger brother that, on two occasions five years earlier, Appellant had sexually abused him. The
State argued a laundry list of reasons for the admission of the testimony, including identity, common
scheme or plan, and opportunity. The trial court allowed the brother's testimony as relevant to rebut
a defensive theory and to the issue of opportunity. The trial court then conducted a rule 403
balancing test and concluded that the evidence was "extremely probative" and that its probative
value was not substantially outweighed by its potentially unfair prejudicial effect.

 The extraneous sexual abuse offense alleged against Appellant by D.C.'s younger brother was
substantially similar to the charged offense. The boys were the same age when their stepfather
allegedly sexually abused them. The manner and location of the abuse alleged by the brothers were
identical.

 A substantial part of Appellant's cross examination of D.C. was devoted to the attempt to
undermine D.C.'s credibility. Appellant's questioning pointedly emphasized that D.C.'s accusation
came five years after the alleged event and coincident with Appellant's expulsion of D.C.'s girlfriend
from their home. Appellant elicited responses from D.C. regarding Appellant's drug and alcohol
abuse, Appellant's mistreatment of D.C.'s mother, the poor condition of the home, and Appellant's
harsh and arbitrary discipline. It is apparent that Appellant brought out this unflattering information,
or allowed the State to elicit it without objection, in order to demonstrate the basis for and depth of
D.C.'s resentment against him, a vicious resentment sufficient to impel D.C. to concoct the charge
against him.

 We agree with the trial court that testimony regarding Appellant's sexual abuse of D.C.'s
younger brother was admissible to rebut Appellant's defensive theory that D.C. had fabricated the
accusation against him. Nor did the trial court abuse its discretion in determining that the probative
value of the brother's testimony regarding the extraneous act of sexual abuse was not substantially
outweighed by the danger of unfair prejudice. As the trial court commented, the brother's testimony
was extremely probative and it served to reinforce the State's case at its weakest point. The
complainant had made no outcry for five years, and then only at a time when as Appellant's cross
examination had shown, he might plausibly be suspected of fabricating the accusation out of an
understandable and deep resentment.

 Sister's Testimony

 Over Appellant's objection, the trial court allowed Appellant's ten year old daughter to testify
that the year before, she awoke one night to find her father over her with his eyes closed and his hand
in her panties feeling her genital area. She had been sleeping that night between her mother and
father as she ordinarily did. She believed Appellant was intoxicated. He never opened his eyes or
said anything to her. After five minutes or more, he rolled over on his side of the bed, apparently
asleep. Two days later, she told her mother what had happened. Her mother called CPS and an
investigation ensued, which resulted in the indictment of Appellant for the sexual abuse of D.C.

 The trial court found the testimony admissible to rebut Appellant's defense of fabrication. 
The court noted that all the assaults against the children took place in the home when they were
approximately the same age. The court also found that the probative value of her testimony
outweighed its potential for unfair prejudice. Her testimony answered a weakness in the State's case. 
In cross examining the two boys, the defense had emphasized the delay, in each instance, of several
years before the alleged victims reported the abuse. In the case of the daughter, as the court noted,
her first outcry came within two days. During cross examination of Appellant's two stepsons,
Appellant had shown that both boys might plausibly be suspected of fabricating their accusations
against Appellant in retaliation for their brutal treatment. Such a motive could not so easily be
assigned to his daughter's testimony. Unlike her brothers, she had not previously denied to CPS that
she had been the victim of sexual abuse.

 Unquestionably, the daughter's testimony tended to show that Appellant was a sexual
predator and that, in assaulting D.C., he acted in conformity with that propensity. However, her
testimony also had relevance apart from its tendency to show character conformity. It forcefully
served to rebut Appellant's defense that he was the victim of a retaliatory "frame up." Its inherent
force coupled with the State's need for such evidence not available from any other source gave her
testimony great probative value. It took little time to present. In balancing the probative value of
the daughter's testimony against its potential for prejudice, we conclude the trial court did not abuse
its discretion in allowing her testimony. This is a close case. In reaching our conclusion we are
mindful of the supreme court's admonition in Montgomery that "trial courts should favor admission
in close cases[.]" Montgomery, 810 S.W.2d at 389.

 Appellant's second issue is overruled.


Expert Testimony Concerning Complainant's Credibility


 In his third issue, Appellant complains the trial court erred in allowing expert testimony
regarding D.C.'s credibility.

Facts

 The State offered the testimony of Gayle Burress, a licensed professional counselor with
extensive experience in counseling sexually abused children. Dr. Burress did not treat or interview
D.C. nor did she interview any of the other witnesses. All her information about the case, she
acknowledged, came from reading the State's file or from law enforcement personnel. Dr. Burress
remained in the courtroom throughout the trial. In the Daubert hearing that preceded her testimony,
Dr. Burress told the court that her role at trial was to answer hypothetical questions about the
behavior and reactions of child abuse victims in order to aid the jury's understanding of why child
abuse victims are frequently reluctant to tell what happened to them--why they often delay making
any outcry. She disclaimed any intention or ability to render an opinion about any individual in the
case, because she had neither examined or evaluated them.

 The trial court ruled Dr. Burress's testimony admissible over Appellant's objection that her
specialized knowledge would not assist the jury's understanding of the evidence or its determination
of a fact in issue, citing Texas Rule of Evidence 702. Appellant also objected that the evidence
would not be relevant under rules 401 and 402.

 On direct examination, the prosecutor asked Dr. Burress, "In your training and experience,
was it unusual for you to treat individuals who were victims of sexual abuse who didn't outcry for
years?" Dr. Burress responded, "It's not at all unusual." Appellant objected, "I'm going to object
to the form of the question as well as the response on the grounds that it is a general question which
does not relate specifically to the people involved in this case or the facts of this case." The trial
court overruled Appellant's objection but allowed Appellant a running objection.

 On cross examination, the following exchange occurred:


 Q. Okay. Of the 100-plus cases or so that you've testified in, how many prosecution
cases would you say you have declined to appear as a witness in?


 A. Not that many, but, periodically, I decline. The case doesn't hold together for me. 
It doesn't fit. There are too many unexplained inconsistencies.



On the State's redirect examination, the following exchange occurred, which Appellant contends
represented direct testimony supporting the credibility of the complainant:


 Q. And you - - actually, you do not have to testify in these cases, do you?


 A. That's right.


 Q. In fact, there have been times where after I give you material and you look at it, you
don't accept the responsibility of coming in here and testifying before twelve
citizens of this county; isn't that correct?


 A. That's correct.


 Q. And you're completely okay with telling me that, aren't you?


 A. Yes, I am.


 Q. But in this case, you're completely fine with testifying before the twelve citizens of
this community, aren't you?


 A. I am.



Standard of Review and Applicable Law

 A witness may offer an expert opinion if the witness is qualified to do so by knowledge, skill,
experience, training, or education, and the witness possesses scientific, technical, or other specialized
knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue. 
Tex. R. Evid. 702. We review a trial court's decision as to whether to allow expert opinion for an
abuse of discretion. See Gallo v. State, 239 S.W.3d 757, 765 (Tex. Crim. App. 2007).

 Although an expert's testimony may indirectly serve to support the credibility of a witness,
an expert's testimony may not constitute a direct opinion on the truthfulness of a child complainant's
allegations. Yount v. State, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993). In Schutz v. State, 957
S.W.2d 52 (Tex. Crim. App. 1997), the court of criminal appeals identified five categories of general
and specific evidence that touch on a complainant's credibility in child sexual assault cases and set
out the circumstances under which each category of evidence is admissible: (1) substantive evidence
of guilt that incidentally impacts on credibility (admissible during offering party's case in chief); (2)
general testimony relating to impaired witnesses or declarants (admissible during offering party's
case in chief if impaired person is expected to be a witness or declarant); (3) general testimony that
directly attacks credibility (admissible during offering party's case in chief to attack credibility of
witness or out of court declarant); (4) general testimony that supports credibility (admissible as
rebuttal to attacks on credibility so long as there is a loose fit between the rebuttal evidence and the
predicate attacks on credibility); and (5) specific testimony supporting or attacking credibility (may
be admitted only to rebut other specific testimony attacking or supporting credibility and only if there
is a "tight fit" between the rebuttal testimony and the previous specific testimony attacking or
supporting credibility). Id. at 75-76.

Discussion

 The State argues that Appellant has failed to preserve error by timely objection raised in the
trial court. See Tex. R. App. P. 33.1(a)(1). At trial, Appellant was granted a running objection to Dr.
Burress's testimony based on his rule 702 objection that her specialized knowledge would not assist
the trier of fact in understanding the evidence or determining a fact in issue. On appeal, Appellant
raises the complaint that Dr. Burress's challenged testimony constituted a direct opinion on the
complainant's credibility. Appellant's complaint on appeal does not comport with his objection in
the trial court, and no error is preserved. See Goff v. State, 931 S.W.2d 537, 551 (Tex. Crim. App.
1996). Appellant's third issue is overruled.


Disposition


 The judgment of the trial court is affirmed.



 BILL BASS 

 Justice





Opinion delivered July 31, 2009.

Panel consisted of Worthen, C.J., Griffith, J., and Bass, Retired Justice, Twelfth Court of Appeals,

Tyler, sitting by assignment.






























(DO NOT PUBLISH)