Opinion
issued December 17, 2009



 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-08-00037-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



WILLIAM EARL JONES, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 400th District Court

Fort Bend County, Texas

Trial Court Cause No. 45830

 

 



MEMORANDUM  OPINION

          A jury convicted
appellant, William Earl Jones, of aggravated robbery and sentenced him to 30
years’ confinement.  See Tex. Penal Code Ann. § 29.03
(Vernon 2003).  Jones had confessed to
robbery, and the issue at trial concerned whether he had used or exhibited a
deadly weapon so as to enhance the offense to aggravated robbery.  On appeal, Jones argues for reversal because:
(1) the prosecutor improperly displayed the knife to the complainant and
discussed it with him during a break in the complainant’s live trial testimony;
(2) the evidence is legally and factually insufficient; and (3) the trial court
erred by permitting the State to introduce evidence of Jones’s unadjudicated
extraneous offenses. 

          We affirm.

Background

          Just before 3:00 a.m. on December 21,
2006, Harrison Le drove to his house in Fort Bend County.  He noticed that a white car was following
him, and he became suspicious.  Le drove
around the block and stopped his car down the street from his house.  Shador Jenkins was driving the car following
Le, and Jones was in the passenger seat. 
Jenkins pulled his white sedan parallel to Le’s car.  Jones got out of the car, opened Le’s door,
punched Le in the face, and demanded money. 
Le refused and fought back for approximately ten minutes, while Jenkins
and Jones punched Le and hit him in the head with a hammer or mallet.  Le testified that Jones tried to stab him
with a knife but missed.  

          Le drove home and called the police,
who broadcasted an advisory that officers should “be on the lookout” for a
white sedan with a partial license plate of G-4-5 carrying two black men
wearing dark clothing.  Tiffany Cortez,
an in-uniform, off-duty Fort Bend County Sheriff’s deputy, heard the alert on
her radio.  At the time, Cortez was close
to the scene of the robbery, patrolling a subdivision as a private security
officer.  Within approximately fifteen
minutes of the “be on the lookout” alert, Cortez saw a white sedan with a
license plate number that included “G” and “4” in the first three places.  She followed the car in her unmarked,
personal truck.  Two black men wearing
dark clothing got out of the car.  Deputy
Cortez asked them to sit on the curb, as she waited for backup to arrive.  She noticed that one of the men had a cut on
his hand and blood on his shoe.  Jenkins
and Jones identified themselves to Cortez. 
After additional law enforcement officers arrived, they obtained consent
to search the car.  The officers found
Le’s driver’s license, social security card, credit card, wallet (with four
dollars), and a “butterfly” or switchblade knife on the passenger side of the
car.  They found two mallets and Le’s
toolbelt in the trunk.

          The sheriff’s deputies arrested Jones
and took him into custody.  After
advising Jones of his rights, the deputies questioned him about the aggravated
robbery.  During the interview, Jones
confessed to robbing Le but denied using a knife or any other weapon during the
robbery.  

          At trial, the State introduced
photographs showing the evidence found in Jenkins’s car, the switchblade knife,
and Jones’s written confession.  Jones
did not object to the admission of any of this evidence, including the
knife.  Jones’s written confession
stated:

On December 21,
2006, Shador Jenkins picked me up at my house. 
I have known Shador since July of this year.  We were just planning on riding around.  The only weapon I had brought [sic] switch
blade knife.  But we each had a hammer
mallet.  Shador and I spotted this Asian
guy about the same time.  He was driving
[sic] white small car.  It may have been
a Honda, an old school model.  We decided
to trail him.  Trail means we wanted to
get him, to take his money.  I think the
Asian guy knew we were behind him.  He
disappeared for a minute.  I had a bad
feeling but the guy turned back up.  We
followed him into a neighbor hood [sic] and he pulled up to a house.  Shador pulled up next to the Asian guy and I
met him before he could get out of the car. 
I told the guy to give me his money. 
The Asian guy was arguing saying he didn’t have anything.  He even tried to drive-off by putting the key
in the ignition, but I was right there, I was too quick.  I got the key from the guy and put it on the
outside of the windshield or on the ground, I don’t remember which.  We started fighting with each other.  The Asian guy was throwing punches as
well.  I guess the guy had pride.  I yelled back for Shador to help me.  I did grab a white tool belt and through
[sic] it back to Shador.  I believe it
may have cut Shador’s hand.  Shador came
around and while the Asian guy worried with me Shador got his wallet.  This is when we got in to leave.  

 

          The
Asian guy tried to hold my door but he had to let go when we moved.  I then saw the Asian guy trying to get our
plate number.  We left and got lost.  I did throw the guys [sic] cell phone and
wallet out the window of Jenkins’ [sic] car. 
I can show the detectives where I did that.  We saw a truck following us.  We didn’t know it was a lawman.  We put the hammers and some of the stuff from
the robbery in the trunk of our car.  I
didn’t hit the Asian guy with anything but my fist.  I did have the hammer but I didn’t need
it.  I don’t think Shador had the hammer
when we were robbing the guy.

 

Le
testified through a translator.  He
identified Jones as one of the robbers. 
He said that the robbers hit him in the head with a hammer, punched him
with their fists, and knocked out one of his teeth.  He testified that Jones also tried to stab
him.  Le said that the robbers stole his
tool belt (containing a screwdriver and a pair of cutters), his cell phone, and
his wallet holding approximately four dollars. 

Le
repeatedly testified that he saw a knife. 
Le described the knife as “bright steel” and shiny.  He said that Jones tried to stab him but
missed.  He said that he felt threatened
and that he feared for his life.  Le
testified that he could not recall some details of the crime because he “was in
pain.”

Le’s
testimony began one afternoon and continued the next morning.  Before Le testified the second day, Jones
asked to speak directly to the trial court. 
Jones informed the trial court that he saw the prosecutor speak to Le
during a break the previous day.  Jones
accused the prosecutor of misconduct by showing Le the knife that had already
been introduced into evidence without objection.  Jones accused the prosecutor of “misleading
[Le] to believe that this was the weapon used in my case.”  The trial court informed Jones that both the
State and Jones’s lawyer were permitted to talk to Le.  The trial court also noted that Jones’s own
lawyer could question Le about the knife. 
On cross-examination, Le reiterated that he saw a knife, but not the
handle, and that he could not positively identify the knife in evidence as the
knife which Jones used in the robbery.

After
Le’s testimony, Jones moved for a directed verdict, which the trial court
denied.  Jones’s attorney argued that in
light of the prosecutor’s off-the-record conversation with Le, Jones wanted to
oppose the prior admission of the knife into evidence.  Jones’s attorney stated, “I’m arguing now
that you should at least tell the jury that they’re not to consider this
particular knife, to strike it and not allow them to consider it as an example
of the type of knife that might have been used.”  The trial court denied Jones’s motion to
strike the knife from evidence.

Although
the State had already offered Jones’s written confession into evidence, as part
of his defense case Jones elected to introduce the videotaped interview.  This decision was consistent with Jones’s
apparent trial strategy to show himself as forthcoming and honest by confessing
to the robbery but denying that it was an aggravated robbery.  In the videotaped interview, Jones denied
using a knife, stating:

No, I ain’t got a knife.  That’s what—I don’t know how he—he thought I
had a knife, for some reason, but I had—I did have a switchblade, though.  But I ain’t had a knife at the time, because
he was like forcing—he wasn’t trying to doing nothing.  He wasn’t doing nothing.  So, when I came up time to him, I just came
up to him with me, aggressive.

 

Jones also denied
striking Le with anything other than his fists, saying, “I didn’t even use the
hammer.  I used my hand alone,” and “I
didn’t hit him with a mallet.  I hit him
with straight fist, all fist.”  Jones
said that after the robbery, he and Jenkins stopped and put the mallets in the
trunk of the car.

In
the interview, Jones admitted to the deputies that he had a prior theft
conviction and five outstanding warrants related to a traffic violation, but he
denied any other trouble with the law. 
“Just I got a theft one time. . . . 
That’s basically all the trouble I’ve been in.  I got into theft, and I get into fights.  I get into fights a lot.  That’s basically it.  But I cooled down on the fights.”  In particular, Jones said he had never robbed
anyone before, “No, I never robbed nobody.” 
He said he respected the way that Le fought back, “Yeah, I respect
it.  I respect it.  I ain’t never—I ain’t never done it before,
so I—I didn’t know what to expect, actually, but I wasn’t expecting that . . .
.”

Jones
also asserted several times over the course of the interview that he was
telling the truth.  “I got to be
truthful, you know. . . .  To process
quicker.  It’s quicker and . . . I got a
better chance—I got a better chance of getting less time if I tell the
truth.”  “I got to think about my
future.  I’d rather sit my time out and
learn my lesson, to really learn my lesson, get out and know what not to do,
you know.”  “Got to tell the truth so I
can . . . saves time.”  “Then you got to
worry about, you know what I’m saying, coming back with a different story.  If you lie, you got to come back with a
different story.  You might mess
around.  It’s on notes, you know what I’m
saying?”

Immediately
after the defense played the videotape for the jury, the State informed Jones
and the trial court that it intended to offer rebuttal evidence to correct the
false impression left by the videotape in which Jones said that he had never
before done anything like this robbery. 
The State informed the trial court that it intended to offer two
witnesses who would testify that Jones had been indicted for two similar
robberies that occurred in Harris County days before the aggravated robbery of
Le.  After considering the arguments of
counsel, the trial court ruled that it would allow the State to introduce
evidence of extraneous offenses to rebut the false impression left by the
videotape.  

Immediately
after the trial court’s ruling, Jones testified.  On direct examination, Jones testified that
he watched the videotape and stood by his statement that he had never before
“done anything like this.”  He admitted
that he had “scrapes and brushes” with the law, but he was vague as to the
nature and extent of his criminal history. 

On
cross-examination, Jones admitted that he had previously been in trouble with
the law and that he had been a member of the Bloods “organization.”  He testified that he had never robbed anyone
with a knife before or committed a robbery at all.  He testified that the knife found in the car
and admitted into evidence was his and that he knew it was illegal to possess a
switchblade knife. When he gave inconsistent answers about whether the
switchblade was in his pocket, he asserted that he was confused but truthful,
“I had no reason to lie about that.”

The
trial court permitted the State to impeach Jones by questioning him about the
Harris County robbery indictments.  Jones
admitted that he was aware of the charges against him.

Admission of Knife Evidence

          In his first issue, Jones contends
that it was improper for a prosecutor to show an item in evidence to a witness
during a break in his ongoing trial testimony if the purpose was to permit the
witness to describe it on the witness stand in later testimony.  Jones argues that the trial court should have
ordered a mistrial.  Alternatively, Jones
argues that the trial court should have struck from evidence the knife and Le’s
testimony about the knife and that the jury should have been instructed to
disregard that evidence.*

 

Mistrial

          After Le’s testimony, Jones moved for
a directed verdict of not guilty, which the trial court denied.  Jones did not move for a mistrial.  To preserve a complaint for appellate review,
a defendant must make a timely, specific objection to the trial court.  Tex. R.
App. P. 33.1(a); see Wilson v.
State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).  An objection stating one legal basis may not
be used to support a different legal theory on appeal.  Heidelberg
v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004).  A complaint on appeal that does not comport
with an objection made at trial does not preserve appellate review of the
complaint.  Wilson, 71 S.W.3d at 349; Goff
v. State, 931 S.W.2d 537, 551 (Tex. Crim. App. 1996); Flores v. State, 125 S.W.3d 744, 746–47 (Tex. App.—Houston [1st
Dist.] 2003, no pet.).  Accordingly,
because Jones failed to move for a mistrial, he has not preserved any complaint
about the trial court’s failure to grant a mistrial.

Motion to Strike Evidence and for Limiting Instruction
to Jury

          Jones also argues that the trial court
should have struck the knife evidence and instructed the jury to disregard
it.  In this regard, Jones contends that
the prosecutor behaved improperly by showing the knife to Le and discussing it
with him during a break in his testimony. 
Jones also alleges that the State led Le to commit perjury in his
testimony about the knife that had previously been admitted into evidence
without objection.  On cross-examination,
Jones’s lawyer asked Le about the knife, but Le could not positively identify
it as the specific knife that Jones used in the robbery:

Q.      But you never
identified this knife.  That’s accurate,
isn’t it?

A.      I said I
saw the knife when they attacked me, but I did not say that I saw that knife,
because I didn’t remember the handle.  

 

On redirect examination, the State also sought clarification:

Q.      Okay.  And you’re not telling this jury that this is
the exact knife, just that the blade is similar?

 

A.      Correct.

. . . 

 

Q.      So, we
don’t know, because you didn’t see this handle, whether this is the exact
knife?

 

A.      Correct.

 

Q.      But you are positive that you saw a knife?

 

A.      Correct.

 

After Le’s
testimony, Jones moved to strike the knife from evidence and asked the trial
court to instruct the jury not to consider it. 
The trial court denied Jones’s motion to strike the knife and so
instruct the jury.

As
a preliminary matter, we note that Jones has not established any prosecutorial
misconduct.  Article 36.06 of the Code of
Criminal Procedure, which codifies “The Rule” as applied in criminal trials,
provides:

Witnesses, when placed under rule, shall be instructed
by the court that they are not to converse with each other or with any other
person about the case, except by permission of the court, and that they are not
to read any report of or comment upon the testimony in the case while under
rule.  The officer who attends the
witnesses shall report to the court at once any violation of its instructions,
and the party violating the same shall be punished for contempt of court.

 

Tex. Code Crim. Proc. Ann. art. 36.06 (Vernon 2007). 
The text of The Rule as codified generally prevents attorneys from conversing
with witnesses about the case once The Rule has been invoked, but that
restriction is expressly qualified to except communications that occur “by
permission of the court.”  Id. 
The record in this case reflects that the attorneys had the permission
of the trial court to speak to the witnesses, as reflected by the trial judge’s
response to Jones, upon hearing Jones’s allegations about the communication, in
which the trial court stated: 

The prosecution certainly has the right to talk to
these witnesses to see what they have to say and to know what evidence to put
on during the trial . . . .  And your
lawyer has the right to talk to these witnesses, too, to find out what they
have to say.  So there’s nothing wrong
with that.

 

In
any case, the trial court did not err in declining to strike the previously
admitted evidence of the knife and Le’s testimony about the knife.  We review a trial court’s ruling on the
admission of evidence for abuse of discretion. 
Brito Carrasco v. State, 154
S.W.3d 127, 129 (Tex. Crim. App. 2005). 
We “must uphold the trial court’s ruling if it is reasonably supported
by the record and is correct under any theory of law applicable to the case.”  Id.  

The
knife itself was relevant evidence.  See Tex.
R. Evid. 402.  The knife was
admitted into evidence before Le testified, through the testimony of a law
enforcement officer who testified that it was found in Jenkins’s car, on the
passenger side where Jones had been riding, near Le’s driver’s license.  A photograph showed the exact location where
the knife was found.  Jones did not
object to the admission of the knife into evidence or request a limiting
instruction at that time.  Likewise, Le’s
testimony about the knife was relevant evidence, and it too was admitted
without any contemporaneous objection.

The
Rules of Evidence permit a limiting instruction to be requested when a trial
court admits evidence, which is admissible for one purpose but not admissible for
another.  Tex. R. Evid. 105(a). 
However, a request for a limiting instruction must be made at the
introduction of the evidence.  Hammock v. State, 46 S.W.3d 889, 894
(Tex. Crim. App. 2001); see Tex. R. Evid. 105.  When a defendant does not request a limiting
instruction at the first opportunity, the evidence is admitted for all
purposes.  See Hammock, 46 S.W.3d at 895.  Once evidence is admitted for all purposes, a
trial court need not issue a limiting instruction to the jury regarding that
evidence.  Id.

We
hold that the trial court did not abuse its discretion by refusing to strike
from evidence the knife or Le’s testimony about the knife.  Because the evidence was properly admitted,
relevant evidence, the trial court did not err by refusing Jones’s request for
a limiting instruction.  Id.

          We overrule Jones’s first issue.

Legal and Factual Sufficiency

In
his second issue, Jones challenges the legal and factual sufficiency of the
evidence.  

Legal Sufficiency Standard

When
evaluating the legal sufficiency of the evidence, we view the evidence in the
light most favorable to the verdict and determine whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789
(1979); Drichas v. State, 175 S.W.3d
795, 798 (Tex. Crim. App. 2005).  The
standard is the same for both direct and circumstantial evidence cases.  King v.
State, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).  We do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, as this was the
function of the trier of fact.  See Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999).  

Factual Sufficiency Standard

In
a factual sufficiency review, we view all of the evidence in a neutral light. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim.
App. 1999).  We will set the verdict
aside only if (1) the evidence is so weak that the verdict is clearly wrong and
manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence.  Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).

Under
the first prong of Johnson, we cannot
conclude that a conviction is “clearly wrong” or “manifestly unjust” simply
because, on the quantum of evidence admitted, we would have voted to acquit had
we been on the jury.  Watson v. State, 204 S.W.3d 404, 417
(Tex. Crim. App. 2006).  Under the second
prong of Johnson, we cannot declare
that a conflict in the evidence justifies a new trial simply because we
disagree with the jury’s resolution of that conflict.  Id.
Before finding that evidence is factually insufficient to support a verdict
under the second prong of Johnson, we
must be able to say, with some objective basis in the record, that the great
weight and preponderance of the evidence contradicts the jury’s verdict.  Id.  In conducting a factual sufficiency review, we
must also discuss the evidence that, according to the appellant, most
undermines the jury’s verdict. See Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

In
reviewing the factual sufficiency of the evidence, appellate courts should
afford almost complete deference to a jury’s decision when that decision is
based upon an evaluation of credibility.  Lancon
v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).  The jury is in the best position to judge the
credibility of a witness because it is present to hear the testimony, as
opposed to an appellate court who relies on the cold record.  Id.  The jury may choose to believe some testimony
and disbelieve other testimony.  Id. at 707.

Aggravated Robbery

A
person commits aggravated robbery when he commits robbery and he causes serious
bodily injury to another, or uses or exhibits a deadly weapon.  See Tex. Penal Code Ann. § 29.03.  A deadly weapon is:

(A) a firearm or anything manifestly designed, made,
or adapted for the purpose of inflicting death or serious bodily injury; or

 

(B) anything that in the manner of its use or intended
use is capable of causing death or serious bodily injury.

 

Tex. Penal Code Ann. § 1.07(a)(17) (Vernon Supp. 2009). 
A knife can be found to be a deadly weapon based on the nature of its
use or intended use.  Id. § 1.07(a)(17)(B); Garcia v. State, 17 S.W.3d 1, 4 (Tex. App.—Houston
[1st Dist.] 1999, pet. ref’d).  Objects
used to threaten deadly force are deadly weapons, even if the actor has no
intention of actually using deadly force.  McCain
v. State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).  Evidence that a knife is displayed in a manner
conveying a threat that serious bodily injury or death will be inflicted is
sufficient to establish use or exhibition of a deadly weapon.  Billey
v. State, 895 S.W.2d 417, 422 (Tex. App.—Amarillo 1995, pet. ref’d).  By producing the knife and exhibiting its
blade, even if only in part, a defendant can achieve his desired effect of
placing a person in fear of death or serious bodily injury. Id. at 422–23.

Discussion

          Jones argues that if the trial court
had suppressed the knife from evidence, the remaining evidence would have been
insufficient to support his aggravated robbery conviction.  However, in conducting a legal sufficiency
review, we “must evaluate all of the evidence in the record, both direct and
indirect, whether admissible or inadmissible.” 
Dewberry v. State, 4 S.W.3d
735, 740 (Tex. Crim. App. 1999).

Jones
confessed to robbing Le.  Several law
enforcement officers testified that a knife could be a deadly weapon.  Le testified that his attackers had a knife
and that Jones tried to stab him. 
Although he denied using a knife in the robbery, Jones admitted
ownership of the switchblade knife found in Jenkins’s car near Le’s wallet and driver’s
license.  Viewing the evidence in the
light most favorable to the verdict, we hold that a rational jury could have
found beyond a reasonable doubt that Jones used or exhibited a knife while
robbing Le, and it was therefore legally sufficient to support Jones’s
conviction.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Drichas, 175 S.W.3d at 798.  Viewing the evidence in a neutral light, we
hold that the evidence is neither so weak that the verdict is clearly wrong and
manifestly unjust nor against the great weight and preponderance of the
evidence, and it was therefore factually sufficient to support the conviction.  Johnson,
23 S.W.3d at 11.

We
overrule Jones’s second issue.

Extraneous Offense Evidence

          In his third through sixth issues,
Jones challenges whether the videotape was testimony such that the State could
rebut it with prior unadjudicated extraneous offenses.  Jones argues that the videotaped confession
was not testimony and, therefore, not
susceptible to challenge by way of rebuttal evidence.  Moreover, Jones argues that his trial
testimony on direct examination corrected any alleged false impression left by
the videotape about his criminal history. 
Having clarified that issue on direct examination, Jones argues that the
State was not entitled to introduce evidence of the Harris County crimes.  The trial court disagreed, reasoning that
Jones’s statements that he had never before robbed anyone, that he had not used
a knife, and that his criminal history was limited to the theft and the
traffic-related warrants created a false impression that he had never committed
or been accused of committing robbery. 

Preservation of Error

          To preserve a complaint for appellate
review, a defendant must make a timely, specific objection to the trial court.  Tex. R.
App. P. 33.1(a); see Wilson,
71 S.W.3d at 349.  An objection stating
one legal basis may not be used to support a different legal theory on appeal.  See
Heidelberg, 144 S.W.3d at 537.  A
complaint on appeal that does not comport with an objection made at trial does
not preserve appellate review of the complaint.  Wilson,
71 S.W.3d at 349; Goff, 931 S.W.2d at
551; Flores v. State, 125 S.W.3d at
746–47.

          On appeal, Jones argues that the trial
court abused its discretion in permitting the State to cross-examine Jones
about whether he was aware of the pending Harris County charges against
him.  In four issues, he argues that this
was improper based on Texas Rules of Evidence 401 to 405 and 607 to 609.  After introduction of the videotape, the
State announced its intention to offer rebuttal evidence, and Jones argued in
opposition to that, but he never objected to the State’s cross-examination of
Jones about extraneous offenses.  Jones
testified, and the State cross-examined Jones about the Harris County cases:

Q.      Well,
tell the ladies and gentlemen of the jury what kind of problems you’ve got in
Harris County right now.

 

          A.      In Harris County?

          

DEFENSE ATTORNEY:        Objection,
Your Honor.  Could we approach?

          

JONES:      No, I’ll answer the question.

          

DEFENSE
ATTORNEY:        I have an objection.

          

(Bench
conference)

          

DEFENSE ATTORNEY:        I
think we need to bring the jury out so I can talk a little louder.

          

TRIAL COURT:  Why?

          

DEFENSE
ATTORNEY:        Well, I’m moving for a
mistrial . . . . 

 

          The parties then argued about whether
the State was entitled to present rebuttal evidence and to what extent and in
what manner the State could impeach Jones. 
Near the end of the parties’ arguments, Jones’s attorney stated:

. . . [I]f he’s not
guilty of either of those crimes in Harris County, that would explain his
statement that “I’ve never done anything like this before,” because if he
didn’t do those other two, this is his first time.  We’re all assuming that he’s lying.

So, I think it would be enough for him to say that he
realizes he’s been charged in Harris County with robbery involving a mallet
that occurred prior to this, the case is still pending.  I don’t know
what more he’d want to say.

 

(Emphasis supplied.)  

          The trial court ruled that
the State could ask Jones about the charges against him.  The State cross-examined Jones about the
Harris County robberies without further objection as follows:

          Q.      Mr.
Jones, despite what you have been telling the jury for the last hour and a half
or two hours, is it not true that you currently have pending in Harris County,
Texas, not one, but two aggravated robberies against you, sir?

 

          A.      It’s true.

 

          Q.      And
the first one is Cause No. 1098277 out of the 263rd District Court?

 

          A.      I read that’s true.  

 

          Q.      In
that particular case, you are alleged to have on December the 19th, 2006, two
days before this alleged offense, to have made an aggravated assault on a
victim named Billie Murski, using a deadly weapon, to-wit, a hammer.  Is that not true, sir?

 

          A.      It’s true.

 

          Q.      Also,
sir, you have a second aggravated robbery offense pending in Harris County,
Texas, in Cause No. 1097927 out of the 263rd District Court as well.  Is that correct? 

 

          A.      That’s true.

 

          Q.      That’s
also for another offense dated December the 19th, 2006, again, two days before
this particular offense.  Is that true?

 

          A.      That’s true.

 

          Q.      In
that particular case, a victim named Erick Perez, alleged to have been
assaulted with a deadly weapon, to-wit, a sledge hammer.  Is that true, sir?

 

          A.      That’s true.

 

          Q.      Three
aggravated robberies, three hammers. 
Does that seem a little bit coincidental to you?

 

A.      Well,
it’s kind of—you said three aggravated robberies, three hammers?

 

          Q.      Yes, sir.

 

          A.      Well—

 

          Q.      You heard the victim say—

 

          A.      It’s
two aggravated robberies with actually two different hammers.  I think you said with a sledge hammer.

 

          Q.      A sledge hammer is alleged in Cause No.
’927, yes, sir.

 

          A.      The second case you brought up?

 

          Q.      The case ending in 277 is hammer.

 

          A.      A hammer. 
Not a mallet, a hammer?

 

          Q.      It says a hammer.

 

          A.      Okay. 
And the second one is a sledge hammer.

 

          Q.      One
sledge hammer, one hammer, and in this case the victim described a mallet being
used, or a rubber hammer.

 

          A.      I understand it.

 

          Q.      Does that seem more than just mere
coincidence to you?

 

          A.      Yeah—no, it don’t.  It seems—

 

          Q.      It’s just that, it’s just a coincidence?

 

          A.      Yeah, it’s a coincidence.  Somebody had it.

 

          There were no further objections, and
the trial court did not rule on Jones’s motion for mistrial.  On appeal, in four issues, Jones challenges
the admission of this evidence.  We find
in the record, however, no timely and specific objection to the questions posed
by the State.  Furthermore, Jones’s
attorney essentially waived any challenge to the questions posed by the State
by conceding that “it would be enough for him to say that he realizes he’s been
charged in Harris County with robbery involving a mallet that occurred prior to
this.”  We hold that Jones waived these
evidentiary challenges by failing to make a timely, specific objection at trial
that comports with his arguments on appeal and to obtain a ruling from the
trial court.  See Tex. R. App. P.
33.1(a); see Wilson, 71 S.W.3d at 349.

          We overrule issues three through six.

Conclusion

 

          We affirm the judgment of the trial
court.

 

 

 

 

                                                          Michael
Massengale

                                                          Justice

 

Panel consists of
Chief Justice Radack and Justices Bland and Massengale.

Do not publish.  Tex.
R. App. P. 47.2(b)

 











*             At
trial, Jones moved to strike the knife evidence, and the trial court denied the
motion to strike.  In his appellate
brief, Jones refers to a “motion to suppress,” and argues that the knife
evidence should have been “suppressed.”  Black’s Law Dictionary distinguishes a
“motion to strike” (“[a] request that inadmissible evidence be deleted from the
record and that the jury be instructed to disregard it”) from a “motion to
suppress” (“[a] request that the court prohibit the introduction of illegally
obtained evidence at a criminal trial”). 
Black’s Law Dictionary 1110
(9th ed. 2009).  Accepting these
definitions, a “motion to strike” is not only what Jones actually offered at
trial, but it also better describes the procedural posture at the time of the
motion.  We construe Jones’s argument on
appeal to be that the trial court erred by failing to strike the knife
evidence, which had previously been admitted without objection.  To the extent that anything different is
intended by Jones’s references to a “motion to suppress,” that argument has
been waived because no motion to suppress was made in the trial court.  See
Tex. R. App. P. 33.1(a).