Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# MEMORANDUM OPINION

No. 04-11-00499-CR

Calvin **JACKSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR2570
Honorable Raymond Angelini, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:    Phylis Speedlin, Justice
Rebecca Simmons, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  November 7, 2012

AFFIRMED

Calvin Jackson was convicted of murder and sentenced to sixty years in prison.  He appeals the judgment, complaining the trial court erred by failing to instruct the jury that a witness was an accomplice as a matter of law, by including a parties instruction in the jury charge, and by misapplying the law of parties in the jury charge.  Jackson also contends the evidence is insufficient to support the jury's verdict.  We affirm the trial court's judgment.

**BACKGROUND**

Jackson was convicted of murdering Jasmayne McCullough. The murder was set in motion by an earlier altercation between two groups of people at a convenience store that ended with the groups shooting at each other. Jackson was at the convenience store with his wife, children, and Bryan Parham when that shooting occurred. Jackson was angered by the shooting because it put his family in danger. After the shooting, Jackson returned home to his apartment at the Nob Hill Apartments. Bryan testified that on the way home Jackson said he wanted to "go get them." At his apartment, Jackson changed into black clothing and retrieved two pistols. According to Bryan, Jackson gave him a 9 mm pistol and told him he knew where the people who had been shooting were staying. Jackson and Bryan went to Bryan's sister's apartment in the same complex, where Bryan changed clothes. Outside of the apartment, Jackson and Bryan saw some of the people who had been fired upon at the convenience store. Jackson and Bryan told them they were going to the La Valencia apartments[1], showed their weapons, and told the group to come along if they wanted. At the La Valencia apartments, some of the people pointed out the apartment where members of the other group purportedly were. Bryan understood the apartment belonged to a girl who allowed some of the people who had been shooting at the convenience store to stay there with her. Bryan testified he could hear music coming from inside the apartment and saw shadows through the window. According to Bryan, Jackson walked up to the window of the apartment, pointed to it as if asking for confirmation, and then fired several shots into the apartment. Bryan testified he went to shoot into the apartment, but his gun jammed after he chambered a round. Jackson and Bryan went to another apartment and gave the guns to the occupant. Bryan returned to his sister's apartment, and Jackson left. The next morning Jackson returned to Bryan's sister Cynthia's apartment. Bryan testified that while

---

[1] From the evidence, it appears the La Valencia Apartments are across the street from the Nob Hill Apartments.

Jackson was waiting for him to get ready, Jackson told Cynthia that Jackson's wife heard on the television that a girl had been shot in the head.

Cynthia Parham testified she is Bryan's sister and that Bryan sometimes stayed with her at the Nob Hill Apartments. The night of the shooting, she had been sleeping but was awakened by gunshots. Soon afterwards, Bryan came in and told her about the shooting at the convenience store and at the La Valencia apartments. She also testified that the morning after the shooting, Jackson came to her apartment to pick up Bryan. While waiting for Bryan to get dressed, Jackson asked her whether she had seen the news. He told her that there had been a shooting the night before and a girl got hit and died. Cynthia testified Jackson told her that he went to the La Valencia Apartments to shoot because of what happened at the gas station — that people had been shooting at the gas station and his kids were in the car, and the car was in the middle of the shooting. Jackson told her he was angry and that he shot through the window, but that he did not mean to shoot the girl.

Ronationa Sylvester testified about what happened inside the apartment where the victim was shot. Sylvester testified she was having a birthday party and a number of people were at her apartment. During the evening, Sylvester and a few people from the party walked to a convenience store where they ran into some other friends. Those friends got into a verbal altercation with two men who came into the store, and the altercation continued into the parking lot. Sylvester testified Jackson was at the convenience store as the altercation got under way. Sylvester walked back to her apartment and was walking up the stairs when she heard gunshots. Sylvester told her visitors to "get down" and move away from the windows. Within minutes, her friends who had been at the convenience store when the shooting took place arrived at her apartment. Sylvester suspected that one of them had shot his gun during the incident and told

him and his friends to leave. She was concerned that the altercation at the store might continue at her apartment. When the shooting into her apartment began, someone turned out the lights in the apartment. When the lights were turned back on, Sylvester saw Jasmayne McCullough had been shot. Jasmine Culton, another occupant of the apartment, testified that when the lights were turned back on, she saw McCullough had been shot in the head and appeared to be dead.

Dominique Robinson testified that Jackson is her father. Robinson was in the car when the shooting occurred at the convenience store. She testified that she got on the floorboard of the vehicle when the shooting started. She heard her dad yelling at the people to stop shooting. On the way back to the apartment, Jackson was angry because the family was in the car at the time of the shooting. Robinson testified that Jackson and Bryan went into the bedroom and Jackson came out wearing black clothes. She also testified Jackson and Bryan had guns. Both men left and came back later looking "sweaty."

Crime scene investigators testified they recovered nine spent .45 caliber shell casings from the crime scene. The slug removed from the victim and bullet fragments recovered from the apartment were identified as .45 caliber bullets. A firearms expert testified that all nine shells were fired in the same weapon and that all the bullets were fired from the same weapon. However, because no weapon was recovered, he could not testify whether the shells were fired in the same .45 caliber weapon that fired the bullets. One live 9 mm round was also found at the crime scene.

Bryan later was arrested on an unrelated matter and offered to reveal information about the murder in exchange for leniency on the unrelated case. Bryan was never charged with the murder of McCullough, but he testified under a grant of use immunity.

**ACCOMPLICE WITNESS INSTRUCTION**

Jackson's first point of error is that the court erred in failing to instruct the jury that Bryan was an accomplice as a matter of law. The trial court instructed the jury to decide whether Bryan was an accomplice, and further instructed that if the jury found Bryan to be an accomplice, then his testimony needed to be corroborated by other evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005) ("A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed.").

An accomplice is one who participates in an offense to the extent that he can be charged with the offense or with a lesser-included offense. *Blake v. State*, 971 S.W.2d 451, 454–55 (Tex. Crim. App. 1998). The trial court is required to provide an accomplice as a matter of law instruction only if there is no reasonable question as to the witness's status as an accomplice. *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011).

The indictment charged Jackson with murder under three different theories: (1) knowing or intentional murder, (2) intending to cause serious bodily injury and committing an act clearly dangerous to human life that causes the death of an individual, and (3) causing the death of an individual by committing an act clearly dangerous to human life while in the course of committing or attempting to commit a felony other than manslaughter. *See* TEX. PENAL CODE ANN § 19.02 (West 2011). Bryan testified he received a pistol from Jackson and accompanied Jackson to the apartments. He testified he watched as Jackson shot into the apartment and admitted he then went to the same apartment and attempted to shoot into the apartment, but his gun jammed. A person is responsible as a party to an offense if, acting with the intent to promote or assist the commission of an offense, he solicits, encourages, directs, aids, or attempts

to aid another to commit the offense. *See* TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011). Bryan's admission that he attempted to shoot into the apartment is some evidence that he could be charged with the murder under any of the three theories. His intent to assist in the commission of the offense can also be inferred from acting in concert with Jackson. *See Burdine v. State*, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986) (holding reviewing court may look to actions of the defendant which show an understanding and common design to commit the offense). There is no reasonable question that Bryan was an accomplice and the trial court therefore erred by failing to instruct the jury that Bryan was an accomplice as a matter of law.

The degree of harm that must be present for jury charge error to require reversal depends upon whether the error was preserved in the trial court by a timely and specific objection. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). Because Jackson did not object to the trial court's accomplice witness charge, we may reverse only if Jackson suffered egregious harm as a result of the error. *See id.*

The purpose of an accomplice witness instruction is to ensure corroborating evidence exists before a jury convicts a defendant on the basis of the testimony of an accomplice. Corroboration is not sufficient if it merely shows the commission of the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). "The corroborative evidence, however, need not be sufficient in itself to establish guilt, nor must it directly link the accused to the commission of the offense." *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008), *cert. denied*, 129 S.Ct. 2075 (2009). Rather, the independent "evidence must simply link the accused in some way to the commission of the crime and show that rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense." *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009) (*quoting Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App.

2008)).  If the record contains non-accomplice corroborating evidence, then the purpose of the instruction was fulfilled, and the trial court's failure to properly instruct the jury is harmless under the egregious harm standard.  *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002).

Here, there is no direct evidence other than Bryan's testimony that Jackson committed the crime.  However, Cynthia testified that the morning after the shooting Jackson told her he had shot "the girl" in the Valencia Apartments by firing through the window.  Her testimony tends to connect Jackson with the crime and is sufficient corroborating evidence.  The jury was therefore entitled to fully consider Bryan's testimony and the trial court's error in failing to instruct the jury he was an accomplice as a matter of law did not cause Jackson egregious harm.

## JURY CHARGE ERROR

Jackson next complains the trial court erred by including an instruction on the law of parties in the jury charge.  The trial court is authorized to provide an instruction on parties when raised by the evidence.  *Goff v. State*, 931 S.W.2d 537, 544 (Tex. Crim. App. 1996).  When the trial evidence shows the active participation of two or more persons in the offense, the trial court should first exclude from consideration the acts and conduct of the non-defendant actor.  If the evidence is sufficient to sustain a conviction as to the defendant, no parties charge is required.  *Id.*  However, if evidence raises an issue that the defendant's conduct is not sufficient, and is dependent in part on the conduct of another, a parties charge is appropriate.  *Id.*

Jackson argues that under the State's theory of the case, based on Bryan's testimony, the evidence was sufficient to sustain a conviction of Jackson as the sole actor, making a parties charge improper.  However, throughout the case Jackson attempted to convince the jury that Bryan was the person who shot into the window and killed the victim.  Jackson presented the

testimony of an eyewitness who claimed to see a person the jury might infer was Jackson walk away from the apartment before the shooting, and saw a person the jury might infer was Bryan standing near the apartment with a gun. Although the evidence supporting the State's theory was much stronger, this evidence is sufficient to raise an issue as to whether Jackson was the principal actor. *See Goff*, 931 S.W.2d at 545 (holding that although the "defendant as principal actor" was the theory best supported by the evidence, trial court did not err in submitting parties instruction because defendant attempted to develop theory that other actor committed crime and sufficient evidence was presented to allow jury to infer defendant acted as party to crime committed by second actor). And under the theory that Bryan shot into the apartment, there is sufficient evidence to authorize the trial court to submit a party charge. Jackson's daughter testified that upon returning to the apartment from the convenience store, Jackson went into the bedroom and changed into black clothing. When Jackson and Bryan left, they each had a pistol. Bryan testified Jackson furnished him a 9 mm pistol. Jackson's daughter testified the men later returned to the apartment together and Jackson was sweaty. If Bryan shot into the apartment as Jackson contends, Jackson's furnishing of the gun is some evidence that he acted as a party, especially given the testimony that Jackson was angered by the shooting at the convenience store and was going to "do something about it." *See Cain v. State*, 976 S.W.2d 228, 234 (Tex. App.— San Antonio 1998, no pet.) (holding liability for offense under law of parties may be established by showing concert of action). The trial court did not commit charge error by including an instruction on the law of parties.

Further, if there was any error in submitting a charge on the law of parties, the error was harmless because the evidence is sufficient for the jury to have found Jackson guilty as a principal. Bryan testified Jackson fired into the apartment, and Bryan's testimony was

corroborated by other evidence that tends to link Jackson to the crime. "Where the evidence clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless." *Ladd v. State*, 3 S.W.3d 547, 564-65 (Tex. Crim. App. 1999) (quoting *Black v. State*, 723 S.W.2d 674, 675 (Tex. Crim. App. 1986)).

### FAILURE TO APPLY PARTIES INSTRUCTION

Jackson also argues the trial court erred by failing to properly apply the law of parties in the application paragraph of the charge. Jackson contends the charge was insufficient because the court failed to instruct the jury as to the "type of assistance" the State claims Jackson provided to the principal actor during the commission of the offense.

At the initial charge conference, the trial court stated he would include a charge on parties. Jackson's lawyer simply said, "I don't think we need it." The final charge included a general description of the law of parties in the abstract part, instructing the jury as to when "a person is criminally responsible as a party to an offense." In the application paragraphs, the court instructed the jury it could find Jackson guilty if the State proved beyond a reasonable doubt that Jackson committed murder under any of the three different theories, "acting alone or acting as a party with Brian Parham." When the trial court presented the final charge and asked if there were any objections to the charge, Jackson's trial counsel stated he had none. Jackson never objected that the application paragraphs of the charge failed to apply the law of parties to the facts of this case, nor did he ask the trial court to narrow the scope of the application paragraphs.

After this appeal was argued and submitted, the Texas Court of Criminal Appeals issued its opinion in *Vasquez v. State*, clarifying that "a general reference to the law of parties in the application paragraph is sufficient and is *not error* when the defendant does not object and

request a narrowing of the specific statutory modes of conduct that constitute party liability . . ." *Vasquez v. State*, PD-0321-11, 2012 WL 4511366, at *5 (Tex. Crim. App. Oct. 3, 2012) (emphasis added). Here, the language in the application paragraph charging the jury it could find Jackson guilty if he either "act[ed] alone or together *as a party* with Bryan Parham" (emphasis added) was a clear reference to the abstract definition of party responsibility. *See Marvis v. State*, 36 S.W.3d 878, 880 (Tex. Crim. App. 2001) (finding no reversible error because charge contained abstract definition of party, application paragraph charged jury could find defendant guilty if defendant acted "alone or together with" another person to commit offense, and the language used was clear reference to the abstract definition of party). Because Jackson did not object or request the court to narrow the application paragraphs to refer only to the specific party-liability acts that were supported by the evidence, there is no error in the charge. *See Vasquez*, 2012 WL 4511366, at 4-5. We overrule Jackson's third point of error.

SUFFICIENCY OF THE EVIDENCE

Lastly, Jackson argues the evidence is insufficient to support the jury's verdict. The jury was charged under three different theories of murder —intentional or knowing murder, intent to cause serious bodily injury, and felony murder — and returned a general verdict. When the jury returns a general verdict based on an indictment charging different theories of committing an offense, the verdict stands if the evidence is sufficient under any one of the theories. *Sanchez v. State*, No. PD-0961-07, 2012 WL 1694606, at *6 (Tex. Crim. App. May 16, 2012).

Jackson argues the conviction cannot stand on either of the first two theories because there was no evidence that he knew the victim was in the apartment or that he intended to harm the victim. We disagree. Sylvester testified that music was playing and lights were on in the apartment just before the shooting, and Bryan testified he could hear the music and saw shadows

through the window of the apartment. Based on this evidence, a rational juror could have found Jackson was aware the apartment was occupied. Jackson argues that although the evidence might demonstrate he intended to harm the people involved in the shooting at the convenience store, it is insufficient to show he intended to harm the victim because the jury charge did not include an instruction on transferred intent.[2]

We measure the sufficiency of the evidence against the hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In *Manrique v. State*, 994 S.W.2d 640, 642 (Tex. Crim. App. 1999), the defendant was convicted of attempted murder when he and a co-defendant fired multiple shots into a house occupied by several members of a family. Manrique contended he thought he was shooting into a rival gang member's home. The trial court did not apply the law of transferred intent to the facts of the case in the application paragraph of the charge. The Court of Criminal Appeals held that the hypothetically correct jury charge would have applied the law of transferred intent, and held that measured against that charge, the evidence was legally sufficient. *Manrique*, 994 S.W.2d at 642. Here, a rational jury could have concluded that Jackson intended to harm the shooters from the convenience store, and either intentionally or knowingly intended to kill them, or intending to cause the shooters serious bodily injury, engaged in an act clearly dangerous to human life that resulted in the death of an individual. Measured against a charge that included an instruction on transferred intent, the evidence is sufficient to support the verdict on the State's first two theories. Accordingly we need not consider Jackson's remaining arguments on this point.

---

[2] The term "transferred intent" refers to an instruction under section 6.04 of the Texas Penal Code, which states that a person is criminally liable for causing a result if the only difference between what actually occurred and what the actor desired is that a different person was injured. TEX. PENAL CODE ANN. § 6.04 (West 2011).

## CONCLUSION

The judgment of the trial court is affirmed.


Steven C. Hilbig, Justice


DO NOT PUBLISH